(No. 76143.—

# THE FOREST PRESERVE DISTRICT OF DU PAGE COUNTY, Appellant, v. WEST SUBURBAN BANK, as Trustee, *et al.*, Appellees.

*Opinion filed August 4, 1994.—Modified on denial of rehearing October 3, 1994.*

Scott M. Day and David W. Krula, of Helm & Day, of Naperville, for appellant.

Barclay & Damisch, Ltd. (John W. Damisch and Michael Svanascini, of counsel), and Patrick J. Mazza & Associates (Michael W. Rathsack, of counsel), all of Chicago, for appellees.

Rooks, Pitts & Poust, of Joliet (Pamela Davis Gorcowski and Richard J. Kavanagh, of counsel), for *amicus curiae* Forest Preserve District of Will County.

Morrison & Morrison, P.C., of Waukegan (Joseph T. Morrison, of counsel), for *amicus curiae* Lake County Forest Preserve District.

Michael M. Roth and Paul L. Stephanides, of Naperville, for *amicus curiae* City of Naperville.

Kenneth T. Kubiesa and Barbara J. Gosselar, of Kubiesa & Power, Ltd., of Westmont, for *amici curiae* Oak Brook Park District *et al.*

James R. Pirages and Samuel J. Castree, Jr., of Hin-

shaw & Culbertson, of Rockford, for *amicus curiae* Byron Forest Preserve District.

JUSTICE NICKELS delivered the opinion of the court:

The issue presented in this appeal is whether a municipal corporation without "quick take" powers may obtain an injunction in an eminent domain proceeding to prevent a landowner from altering the subject property. The trial court granted an injunction on behalf of plaintiff, the Forest Preserve District of Du Page County, preventing defendants from excavating land that was the subject of condemnation proceedings. On interlocutory appeal, the appellate court found that the injunction amounted to an unconstitutional taking under the Illinois Constitution and reversed the trial court's order granting the injunction. (249 Ill. App. 3d 900; Ill. Const. 1970, art. I, § 15.) The appellate court granted the plaintiff a certificate of importance, and we accepted jurisdiction pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316). For the following reasons, we reverse the appellate court and reinstate the injunction.

The facts relevant to the disposition of this appeal can be stated briefly. On January 15, 1988, plaintiff filed a condemnation action concerning 45 acres of property located in Du Page County. This property was zoned for industrial use, but was currently being utilized as farmland and as storage for heavy machinery. The condemnation proceeding was continued for various reasons during the following years, including defendants' need to substitute counsel on several occasions.

In May of 1991, with the condemnation action still pending, defendants obtained a permit from the County of Du Page allowing for the development of 14 acres of the subject property into a parking lot. Defendants' plans consisted of scraping off the topsoil, hauling it to a different site, and bringing in 45,000 cubic yards of clay.

Defendants planned to compact this clay on the subject property and apply a granular surface. In October of 1991, defendants began constructing the parking lot by scraping the topsoil and depositing clay on the property.

After observing this activity on the property, plaintiff sought and received a temporary restraining order preventing further construction. This order remained in effect by agreement of the parties during settlement negotiations concerning the just compensation to be paid for the property. When these negotiations failed, plaintiff sought a preliminary injunction. In support of the motion for injunctive relief, plaintiff alleged that the purpose of the condemnation was to preserve the flora and fauna on the property. The motion also alleged that an injunction was necessary to prevent defendants from irrevocably altering the naturally occurring top soil, vegetation, topography, and drainage patterns.

A hearing was held on plaintiff's motion for a preliminary injunction. At the hearing, there was testimony that the projected cost to construct the parking lot was $4,000 to $5,000. Also, there was testimony that the cost to plaintiff to restore the property at the time of the hearing would be $240,000. If the construction should be completed, the cost to restore the property would increase to $460,000. There was testimony that even with restoration the harm to the soil, flora and water characteristics of the property was irreparable.

After this hearing, the trial court granted plaintiff's motion for a preliminary injunction. In support of this order, the trial court found that, because of plaintiff's statutory right to condemn the property, there was a substantial likelihood of plaintiff's succeeding on the merits. The trial court also found that plaintiff had no adequate remedy at law because the damage sustained to the property would be irreversible and the cost to

restore the property would exceed the original purchase price of the land. The trial court also found that the damage to the defendants resulting from the injunction was less than the damage to the plaintiff if construction were allowed to continue.

The trial court's order enjoined defendants from any construction on the property. However, the order explicitly allowed defendants to continue farming the property, to perform maintenance on an existing wash pit, and to erect a soil erosion fence. In addition, defendants were permitted to continue parking equipment on the property.

Defendants sought interlocutory review of the order granting the preliminary injunction. Defendants' brief raised six challenges to the injunction. The appellate court found that plaintiff's request for an injunction in the condemnation proceeding amounted to a "quick take" of the property, thus exceeding the plaintiff's condemnation authority granted by the legislature. The appellate court reversed the order on the theory that the injunction constituted a taking without just compensation in violation of the Illinois Constitution (Ill. Const. 1970, art. I, § 15). As the appellate court found this issue dispositive, it did not reach defendants' remaining arguments.

The appellate court denied plaintiff's petition for rehearing, but granted a certificate of importance. (134 Ill. 2d R. 316.) On appeal, defendants argue that plaintiff's injunction amounts to a "quick take" of the property, thereby exceeding the plaintiff's statutory condemnation powers. In addition, defendants argue that allowing an injunction in a condemnation proceeding amounts to a taking without just compensation in violation of our State and Federal Constitutions. Ill. Const. 1970, art. I, § 15; U.S. Const., amend. V.

Plaintiff argues that without injunctive relief, any

defendant can prevent condemnation by destroying those aspects of the property sought to be acquired. Plaintiff further argues that the injunction does not amount to a taking. Alternatively, if considered a taking, plaintiff argues, an injunction issued in a condemnation proceeding is not unconstitutional because compensation will eventually be paid to defendants. We allowed various municipalities and forest preserve districts to file *amicus curiae* briefs on behalf of plaintiff.

We first address defendants' argument that plaintiff's injunction amounted to a "quick take" of the property, thereby exceeding plaintiff's statutory power. As a sovereign, the State has an inherent power to condemn property for public use. (*Department of Public Works & Buildings v. Kirkendall* (1953), 415 Ill. 214, 218.) Where the legislature delegates the power of eminent domain, it is the province of the courts to determine whether that power has been exercised within that grant. *Department of Public Works & Buildings v. Keller* (1975), 61 Ill. 2d 320, 324.

A comparison between an ordinary condemnation proceeding and a "quick take" proceeding shows that the injunction did not amount to a "quick take" of defendants' property. In an ordinary condemnation proceeding, a landowner continues to enjoy title and possession of the land pending a final determination of just compensation and the deposit of that amount for his benefit. (*City of Chicago v. R.R. Building Corp.* (1962), 24 Ill. 2d 20, 22.) In contrast, the legislature has provided a means for certain State departments, agencies, and units of local government to execute a "quick take" and obtain title or possession before a final determination and payment of just compensation. (Ill. Rev. Stat. 1991, ch. 110, par. 7—103.) The purpose of the "quick take" statute is to provide a means to prevent

delays to public projects that could result pending the final determination of just compensation, while at the same time protecting the rights of the landowner. (*Department of Public Works & Buildings v. Vogt* (1977), 51 Ill. App. 3d 770, *affirmed* (1978), 72 Ill. 2d 287.) Under this "quick take" statute, a condemnor files a motion for title and/or possession and the court enters a preliminary finding concerning the amount of just compensation. (Ill. Rev. Stat. 1991, ch. 110, par. 7—104.) Title or the right to possession then vests with condemnor by order of the court upon payment of this preliminary amount. (Ill. Rev. Stat. 1991, ch. 110, par. 7—105.) Upon a final determination of just compensation by a jury, any excess payment is returned or any shortfall satisfied by the condemnor. Ill. Rev. Stat. 1991, ch. 110, pars. 7—106, 7—109, 7—123.

There is no dispute that the plaintiff forest preserve district lacks statutory "quick take" powers. Defendants argue that granting plaintiff a preliminary injunction preventing defendants from the lawful use of their property amounts to a judicial grant of "quick take" power to plaintiff where the legislature has not seen fit to grant such power. Defendants further argue that allowing plaintiff to utilize an injunction in place of "quick take" powers allows the plaintiff to thwart the statutory requirement that plaintiff pay preliminary compensation before asserting rights of possession.

We reject defendants' arguments. The preliminary injunction issued did not amount to a "quick take" of defendants' property because the injunction did not grant plaintiff either title or possession of the property. Plaintiff's injunction merely sought to preserve the status quo during the pendency of a determination of just compensation by preventing the destruction of the attributes of the property sought for public use. Defendants continued to possess title to the property, along

with the right to continue farming the property, park equipment on the property, and operate a wash pit on the property. Thus, there was no "quick take" of defendants' property by injunction and plaintiff did not exceed its statutory condemnation authority.

Defendants' second argument is that the plaintiff's injunction constituted a taking without just compensation. The State, as a sovereign, has an inherent right to condemn property for public use. (*Kirkendall*, 415 Ill. 214.) However, this right is restricted by our State and Federal constitutional protections providing that private property may not be taken for public use without just compensation to the owner. (Ill. Const. 1970, art. I, § 15; U.S. Const., amend. V.) We find that the appellate court erred in determining that a preliminary injunction in the context of a condemnation proceeding constitutes a taking without just compensation.

As a preliminary matter, there is a somewhat amorphous question of when a taking occurs in the context of a condemnation proceeding. This court has stated that, in one sense, a taking occurs in the context of a condemnation proceeding at the time of filing the complaint. (See, *e.g.*, *City of Chicago v. McCausland* (1942), 379 Ill. 602, 605; *City of Chicago v. Collin* (1922), 302 Ill. 270, 275.) That is the point in time when the property is valued. (*Department of Public Works & Buildings v. Divit* (1962), 25 Ill. 2d 93, 100.) In addition, the title acquired upon payment of just compensation relates back to the time of filing the complaint. (*McCausland*, 379 Ill. at 605.) Thus, defendants, as a matter of legal fiction, have indeed suffered a taking for which they are entitled to compensation.

Although certain rights of the parties in a condemnation suit vest upon the filing of a complaint, we recognize that defendants continue to enjoy title and the rights associated with possession of the property pending

the payment of compensation. Therefore, in a more corporeal sense, defendants continue to have property rights that invoke constitutional protection. Even in the context of a condemnation proceeding, an individual's cherished private property rights must be protected from governmental overreaching. Indeed, the condemning authority may abandon the proceeding, leaving defendants with their property. Here, although in the context of a condemnation proceeding, we recognize that defendants have suffered a governmental restriction on a lawful use of their property.

This court has recognized that a defendant in a condemnation proceeding continues to possess rights not taken by the filing of a complaint. In a somewhat contradictory fashion, this court has stated that a taking does not occur until compensation is ascertained and paid. (*Chicago, Burlington & Quincy R.R. Co. v. Cavanagh* (1917), 278 Ill. 609, 617; see also *Towne v. Town of Libertyville* (1989), 190 Ill. App. 3d 563, 568 ("The taking of property in the constitutional sense is accomplished only by the filing of a petition, the ascertainment of value, and the payment of just compensation").) While the rights of the parties in a condemnation proceeding operate in analytically cloudy waters, we need not struggle with theoretical line drawing, as a review of the relevant authorities shows that defendants' constitutional property rights were not abridged by the preliminary injunction at issue.

A governmental taking of private property for public use can occur in different ways. One manner of taking occurs when there is an actual physical invasion by the government onto an individual's property. Where there is even the slightest physical intrusion onto the property by the government, and despite any legitimate public purpose, a taking requiring just compensation has occurred. (*Lucas v. South Carolina Coastal Council*

(1992), 505 U.S. 1003, 1014, 120 L. Ed. 2d 798, 812, 112 S. Ct. 2886, 2892-93; *Horn v. City of Chicago* (1949), 403 Ill. 549, 554.) Defendants, however, do not claim that there has been a physical invasion of their property that constitutes a taking.

A second manner of taking property occurs where governmental regulation radically curtails a property owner's rights such that "all economically beneficial or productive use of land" is denied. (*Lucas*, 505 U.S. at 1015, 120 L. Ed. 2d at 813, 112 S. Ct. at 2893.) Under this standard, only the most severe governmental regulation amounts to a taking requiring just compensation. Although an injunction is, strictly speaking, not the same as a legislative regulation, we will honor defendants' request to analyze the injunction under the same standard for determining whether a taking has occurred.

The preliminary injunction in the present case does not amount to a regulatory taking of defendants' property. The injunction did not radically curtail defendants' right to use the property or deprive defendants of all economically viable use of the property. Defendants continued to have the right to farm the property, operate the wash pit, and store equipment on the property. The only activity enjoined was defendants' attempt to build a parking lot. The injunction did not deprive defendants of all economically viable use of the property and therefore did not amount to a regulatory taking.

More importantly, in the context of a condemnation proceeding, a preliminary injunction cannot be considered a taking *without just compensation.* The very purpose of an eminent domain proceeding is to determine the amount of just compensation constitutionally owed to the landowner. (*Illinois Cities Water Co. v. City of Mount Vernon* (1957), 11 Ill. 2d 547, 551.) This is espe-

cially true when, as here, defendants do not contest the condemnation by a traverse or motion to dismiss. In construing the concomitant fifth amendment protection applicable as a principle of due process, this court stated:

"[T]he fifth amendment's prohibition of the taking of private property for public use without just compensation does not preclude the State from taking private property, but only requires the State pay compensation. (*Williamson County Regional Planning Comm'n v. Hamilton Bank* (1985), 473 U.S. 172, 87 L. Ed. 2d 126, 105 S. Ct. 3108.) The fifth amendment does not require that just compensation be paid in advance of, or even contemporaneously with, the taking. (*Hamilton Bank*, 473 U.S. at 194, 87 L. Ed. 2d at 143-44, 105 S. Ct. at 3120.) 'If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking.' (*Hamilton Bank*, 473 U.S. at 194-95, 87 L. Ed. 2d at 144, 105 S. Ct. at 3121, quoting *Ruckelshaus v. Monsanto Co.* (1984), 467 U.S. 986, 1013, 1018 n.21, 81 L. Ed. 2d 815, 839, 842 n.21, 104 S. Ct. 2862, 2878, 2881 n.21.)" (*Beverly Bank v. Illinois Department of Transportation* (1991), 144 Ill. 2d 210, 229-30.)

We interpret our present State constitutional protection against taking property without just compensation in the same way. (See *Department of Public Works & Buildings v. Butler Co.* (1958), 13 Ill. 2d 537, 547 (construing taking provision in Constitution of 1870 and holding that the "Illinois constitution does not prohibit the taking, possession, and use of private property by the State prior to the fixing and payment of compensation, provided of course, that the authorizing statute adequately safeguards the right of the owner of such property to just compensation").) Therefore, as defendants are engaged in an adequate process for receiving just compensation for their property, even considering the preliminary injunction as a taking does not require the immediate payment of compensation.

We conclude that plaintiff did not exceed its statu-

tory authority in seeking a preliminary injunction. We also conclude that the preliminary injunction did not amount to a "taking" of defendants' property without just compensation. Therefore, we reverse the appellate court. As the appellate court did not reach the defendants' remaining challenges to the injunction, we remand to the appellate court for consideration of those issues.

*Appellate court reversed;*
*cause remanded.*