# Illinois Official Reports

## Appellate Court

---

### *Enbridge Pipelines (Illinois), L.L.C. v. Troyer*,
### 2015 IL App (4th) 150334

---

| | |
|---|---|
| Appellate Court Caption | ENBRIDGE PIPELINES (ILLINOIS), L.L.C., n/k/a ILLINOIS EXTENSION PIPELINE COMPANY, L.L.C., Plaintiff-Appellee, v. LESLIE DEAN TROYER, MARY TERESA TROYER, FIRST NATIONAL BANK OF SULLIVAN, as Mortgagee, and NON-RECORD CLAIMANTS and UNKNOWN OWNERS, Defendants-Appellants. |
| District & No. | Fourth District<br>Docket No. 4-15-0334 |
| Filed<br>Rehearing denied | September 22, 2015<br>October 21, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 14-ED-12; the Hon. Paul G. Lawrence, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas J. Pliura, of LeRoy, for appellants.<br><br>John Spesia and Jacob E. Gancarczyk, both of Spesia & Ayers, of Joliet, and Gerald A. Ambrose, Angelo J. Suozzi, and William B. Bruce, Jr., all of Sidley Austin LLP, of Chicago, for appellee. |

Panel | PRESIDING JUSTICE POPE delivered the judgment of the court, with opinion.
Justices Holder White and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Enbridge Pipelines (Illinois), L.L.C., now known as Illinois Extension Pipeline Company, L.L.C. (IEPC), obtained eminent-domain authority from the Illinois Commerce Commission (ICC) over certain real property upon which it is constructing a liquid petroleum pipeline. Multiple landowners have been subject to IEPC's eminent-domain authority. Defendants (Landowners) in this matter are landowners in McLean County who have been unable to reach an agreement with IEPC on the amount of just compensation to be paid and are scheduled for jury trials later this year on that issue. In April 2015, IEPC sought and received an injunction granting it the right to access the permanent and temporary easements it obtained in condemnation proceedings so it can begin construction of the pipeline on Landowners' tracts. Landowners filed the instant interlocutory appeal asking this court to dissolve the injunction until the juries have determined the just compensation due and said compensation has been paid by IEPC. We affirm the trial court's order granting IEPC access to the real estate so it can construct the pipeline.

¶ 2                                    I. BACKGROUND

¶ 3    In August 2007, IEPC filed an application for a certificate in good standing and other relief pursuant to section 15-401 of the Common Carrier by Pipeline Law (Pipeline Law) (220 ILCS 5/15-401 (West 2006)). IEPC's application sought approval from the ICC to construct and operate a liquid petroleum pipeline project named the "Southern Access Extension" (SAX). IEPC described the proposed extension as a 36-inch-diameter underground pipeline that would originate from its Flanagan terminal located near Pontiac, Illinois, and terminate approximately 170 miles south at its Patoka terminal located near Patoka, Illinois. IEPC's application also sought to acquire, when necessary, easements on private property to construct the SAX pipeline pursuant to eminent domain, as authorized by section 8-509 of the Public Utilities Act (Act) (220 ILCS 5/8-509 (West 2006)).

¶ 4    In July 2009, the ICC issued an order in docket No. 07-0446 granting IEPC's application for a certificate in good standing, which effectively authorized construction of the SAX pipeline. The ICC, however, denied IEPC's request for eminent-domain authority, urging instead that IEPC continue negotiations with landowners who declined the compensation IEPC offered in exchange for an easement on the landowners' properties. Despite its denial, the ICC stated, "in the event [IEPC] is still unable to obtain the necessary easement rights through the negotiation process, it can renew its request for authority to exercise eminent[-]domain authority by *** demonstrating that it has made reasonable attempts to obtain easements, through good-faith negotiations."

¶ 5    Intervenors appealed the ICC's order granting IEPC a certificate in good standing, and this court affirmed. *Pliura Intervenors v. Illinois Commerce Comm'n*, 405 Ill. App. 3d 199,

200, 942 N.E.2d 576, 578 (2010). In January 2011, the Supreme Court of Illinois denied Intervenors' petition for leave to appeal. *Pliura Intervenors v. Illinois Commerce Comm'n*, 239 Ill. 2d 589, 943 N.E.2d 1108 (2011).

¶ 6        In July 2013, IEPC filed a petition renewing its request for eminent-domain authority under section 8-509 of the Act. IEPC sought to apply that authority to 148 of the 680 tracts of land comprising the SAX pipeline project route, claiming further negotiations with the owners of those respective properties would be futile.

¶ 7        In April 2014, the ICC granted IEPC the right to exercise eminent domain, subject to certain conditions not relevant here. This court affirmed the ICC's grant of eminent domain in May 2015. See *Pliura Intervenors v. Illinois Commerce Comm'n*, 2015 IL App (4th) 140592-U.

¶ 8        On March 26, 2015, IEPC filed a motion seeking to enjoin Landowners from interfering with its access to the tracts of real estate at issue so IEPC would be able to construct the pipeline in an efficient, effective, and timely manner. IEPC's verified motion set forth the following:

(1) The pipeline, an $800 million project, is scheduled to be in service in December 2015. To achieve that in-service date, IEPC must adhere to an intricate, interrelated construction schedule consisting of a carefully orchestrated series of tasks to be performed in a specific order by specialized crews and equipment, sequentially through the relevant tracts.

(2) Timely completion of the project is necessary for IEPC to fulfill its contractual obligations.

(3) Landowners have refused to allow IEPC access to their tracts, despite IEPC's clear right to construct the pipeline on those tracts.

(4) If the construction process is disrupted and fragmented by lack of access to certain tracts, if may be necessary to employ time-consuming and expensive move-around techniques. A single substantial skip along the route can easily result in as much as $500,000 or more in increased construction costs as well as significant delays in workflow due to repeated relocation of personnel and equipment.

(5) In addition to the significant lost revenue resulting from construction delays, any delay in the in-service date would significantly impair the reputation of IEPC and its affiliated Enbridge entities for reliability and dependability as common-carriers-by-pipeline.

(6) Landowners' only remaining issue in the litigation is the amount of just compensation to be paid by IEPC for access to the tracts.

(7) IEPC will deposit with the court the full amount of the compensation awards sought by Landowners for the value of the easements and a bond to cover all alleged damages to the remainder. (IEPC's motion makes clear it believes the actual values are much lower than Landowners have calculated, it expects the jury verdicts to be much lower than the amounts sought, and if the jury awards less than the amount IEPC deposits with the court, IEPC is entitled to have the remaining balance returned.)

(8) IEPC has no adequate remedy at law because it has no recourse against any party for the increased costs, loss of revenue or customers, or damage to its reputation.

(9) Landowners will suffer no harm because the deposited funds are sufficient to cover the values of the easements demanded by them.

¶ 9 Landowners contended IEPC does not have a right to access the tracts until a jury determines the amount of just compensation due and that amount is paid by IEPC.

¶ 10 On April 20, 2015, the trial court issued a written order granting IEPC access to Landowners' tracts. The court found (1) IEPC established it had a clear and certain right in Landowners' property to construct, operate, and maintain a pipeline; (2) its right was in need of protection; (3) absent an injunction, IEPC would suffer immediate and irreparable harm; (4) there was no remedy at law, as Landowners even admitted; (5) IEPC had already succeeded on the merits of the litigation, only the issue of "just compensation" remained to be determined; (6) through a variety of methods, IEPC had succeeded in obtaining access to approximately 650 of the 680 tracts needed to construct the pipeline. The McLean County tracts were "all that remain between start and finish of the route"; (7) under these circumstances, Landowners' tracts are a barrier to the timely completion of the pipeline project and are being used to delay a project determined by the ICC to be needed in the public interest; and (8) the public interest in an adequate and dependable supply of refined petroleum products, as determined by the ICC in its certification order, requires an adequate transport infrastructure for crude petroleum and the timely completion of IEPC's project serves that interest and weighs in favor of the injunction.

¶ 11 The trial court granted IEPC's motion and ordered Landowners to refrain from impeding IEPC's access to the subject tracts for the purpose of constructing, operating, and maintaining the pipeline. The court directed IEPC to deposit $1.7 million with the McLean County treasurer to cover the maximum amounts Landowners claimed for the permanent and temporary easements. The court also required IEPC to post a surety bond in the amount of $27 million to secure Landowners' claims for any damages to the remainder.

¶ 12 This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14 Landowners appeal from the grant of injunctive relief, contending the trial court abused its discretion in granting IEPC access before just compensation was determined and paid. This court has jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010) (an appeal may be taken from an interlocutory order granting an injunction). We review the decision to grant an injunction for an abuse of discretion. *Roxana Community Unit School District No. 1 v. WRB Refining, LP*, 2012 IL App (4th) 120331, ¶ 27, 973 N.E.2d 1073 ("We review a trial court's decision granting or denying a preliminary injunction for an abuse of discretion, which occurs only when its ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the court's view." (Internal quotation marks omitted.)).

¶ 15 Landowners also contend the trial court had no legal authority to support its decision to grant access to IEPC before a jury determined just compensation and IEPC paid that amount to Landowners. As a legal question, we review this issue *de novo*. See *Clinton Landfill, Inc.*

*v. Mahomet Water Valley Authority*, 406 Ill. App. 3d 374, 378, 943 N.E.2d 725, 730 (2010); *Advanced Imaging Center of Northern Illinois Ltd. Partnership v. Cassidy*, 335 Ill. App. 3d 746, 748, 781 N.E.2d 664, 666 (2002).

¶ 16                     A. Trial Court Had Equitable Authority to Issue a Preliminary Injunction

¶ 17     We turn to the legal question first, because if the trial court did not have legal authority to issue an injunction, we need not determine whether it abused its discretion in doing so. A court would have no discretion to issue an injunction without legal authority.

¶ 18     Both parties cite *Forest Preserve District v. West Suburban Bank*, 161 Ill. 2d 448, 641 N.E.2d 493 (1994), as support for their respective positions. In that case, the trial court issued a preliminary injunction to prevent the bank from constructing a parking lot on land subject to condemnation proceedings. The forest preserve district (District), like IEPC here, did not have "quick take" powers. *Id.* at 450, 641 N.E.2d at 494. The purpose of the condemnation proceeding was to preserve flora and fauna on the property. In issuing a preliminary injunction, the court found the District was likely to succeed on the merits because it had a statutory right to condemn the property. *Id.* at 451, 641 N.E.2d at 495. The court also found the District had no adequate remedy at law because the property would sustain irreversible damage and the cost of restoration would exceed the original purchase price of the land. *Id.* at 451-52, 641 N.E.2d at 495. The order enjoined the defendants from any construction on the property but allowed the defendants to continue farming the property, to perform maintenance on an existing wash pit, to erect a soil erosion fence, and to continue parking equipment on the property. *Id.* at 452, 641 N.E.2d at 495.

¶ 19     The appellate court reversed, finding the request for an injunction in the condemnation proceeding amounted to a "quick take" of the property, exceeding the District's condemnation authority. *Id.* The supreme court reversed the appellate court, finding the injunction did not amount to a "quick take" of the defendants' property because it did not grant the District title or possession of the property. *Id.* at 453-54, 641 N.E.2d at 496. As the supreme court noted, "[i]n an ordinary condemnation proceeding, a landowner continues to enjoy title and possession of the land pending a final determination of just compensation and the deposit of that amount for his benefit." *Id.* at 453, 641 N.E.2d at 496.

¶ 20     In the case at bar, the condemnation proceeding does not fit into the category of an "ordinary" condemnation proceeding as described above. Landowners retain both title to and possession of their tracts. When these proceedings terminate, Landowners will continue to hold title and possession of their tracts. The injunction simply prevents Landowners from impeding IEPC's access to the tracts for the purpose of installing, operating, and maintaining a pipeline, rights which have been approved by the ICC and upheld by this court. As in *West Suburban Bank*, "[t]he injunction did not radically curtail defendants' right to use the property or deprive defendants of all economically viable use of the property." *Id.* at 457, 641 N.E.2d at 497. There the defendants continued to have the right to farm and store equipment on the property, just as Landowners do here. As a result, since the injunction did not deprive the defendants of all economically viable use of the property, it did not amount to a regulatory taking. *Id.* As the supreme court specifically noted, in the context of condemnation proceedings, a preliminary injunction cannot be considered a taking *without compensation*, as the very purpose of a condemnation proceeding is to determine the amount of just compensation constitutionally owed to the landowner. *Id.* See also *Northern Border Pipeline*

*Co. v. 64.111 Acres of Land*, 125 F. Supp. 2d 299 (N.D. Ill. 2000) (where parties agreed plaintiff had no statutory authority to immediate possession of the property, court nevertheless found it had equitable power to issue preliminary injunction granting possession even though just compensation had yet to be determined).

¶ 21 Landowners refer to the preliminary injunction as an unconstitutional taking. They fail to develop this argument at all as required by Illinois Supreme Court Rule 341(h) (eff. Feb. 6, 2013), and thus, they have forfeited it. See *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804, 909 N.E.2d 353, 362 (2009). Nevertheless, we point out the constitution " 'does not require just compensation be paid in advance of, or even contemporaneously with, the taking.' " *West Suburban Bank*, 161 Ill. 2d at 458, 641 N.E.2d at 498 (quoting *Beverly Bank v. Illinois Department of Transportation*, 144 Ill. 2d 210, 229-30 (1991), citing *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985)) (noting our supreme court interprets the present state constitutional protection against taking property without just compensation in the same way as quoted above).

¶ 22 The supreme court in *West Suburban Bank* went on to state, even if the preliminary injunction constituted a taking, because the defendants were engaged in an adequate process for receiving just compensation for their property, immediate payment of compensation was not required. *Id.*

¶ 23 In the case at bar, the ICC granted eminent-domain authority to IEPC, and this court affirmed the grant of that power. *Pliura Intervenors*, 2015 IL App (4th) 140592-U. Thus, IEPC has established its condemnation rights. Nothing remains to be done but to set just compensation.

¶ 24 As noted above, this is not an ordinary condemnation case. Landowners retain title to their land and will still retain title when these proceedings finally come to an end. Landowners also retain possession of the real estate and will still retain possession when these proceedings finally end. Under these circumstances, the trial court retained its equitable authority to order Landowners not to impede IEPC's access to their property for pipeline purposes. In addition, as discussed more fully below, the court took steps to protect Landowners by requiring IEPC to deposit with the county treasurer $1.7 million and a $27 million surety bond.

¶ 25                 B. Trial Court Did Not Abuse Its Discretion in Granting the Injunction

¶ 26 Based on the facts outlined above, the trial court correctly weighed the factors which determine whether an injunction should issue. A preliminary injunction may issue if "(1) a clearly ascertainable right requires protection, (2) irreparable injury will result in the absence of an injunction, (3) no adequate remedy at law is available, and (4) the moving party is likely to succeed on the merits of the case." *Roxana Community Unit School District No. 1*, 2012 IL App (4th) 120331, ¶ 23, 973 N.E.2d 1073 (citing *Clinton Landfill, Inc.*, 406 Ill. App. 3d at 378, 943 N.E.2d at 729). A preliminary injunction should issue only if the harm to the plaintiff in the absence of such relief likely outweighs the harm to the defendant if the relief is granted. *Id.*

¶ 27 Here, IEPC had clearly established its rights in Landowners' properties by obtaining a certificate to build the pipeline from the ICC, as well as the right of condemnation. As noted above, this court affirmed both of those rights. Further, due to the intricate scheduling,

sequential moving parts, deadlines, et cetera, IEPC proved it would suffer irreparable financial harm for which it could not seek recompense, as well as harm to its reputation as a certificated common-carrier pipeline company. IEPC has already succeeded on the merits of the condemnation proceeding. It has the right to build the pipeline on the subject tracts, and the issuance of the injunction granting access protects that right.

¶ 28 Further, IEPC offered, and the trial court required it, to deposit enough cash ($1.7 million) to cover the full amount claimed by Landowners as the value of their easements. IEPC also posted a $27 million surety bond to cover any damages to the remainder. The amount of just compensation will be decided by a jury, but clearly IEPC has the wherewithal to fully compensate Landowners for any amount the juries may assess. Further, IEPC agreed the trial court can allow Landowners access to the funds deposited with the treasurer upon application and a hearing. Thus, the funds are available to Landowners prior to any determination of just compensation.

¶ 29 We find the trial court, under the circumstances here, did not abuse its discretion in granting IEPC an injunction to prevent Landowners from impeding IEPC's access to construct, operate, and maintain the pipeline on Landowners' tracts.

¶ 30                                  III. CONCLUSION

¶ 31 In balancing the hardships to the parties and considering the appropriate factors in making the decision to grant IEPC access to Landowners' tracts, as well as requiring the posting of sufficient funds and security to ensure just compensation will be paid, the trial court did not abuse its discretion by issuing an injunction to allow IEPC access without impediment by Landowners.

¶ 32 We affirm the trial court's judgment.

¶ 33 Affirmed.