(No. 27092.—

MARION O. KANE *et al.*, Appellants, *vs.* THE CITY OF
CHICAGO, Appellee.

*Opinion filed November 16, 1943.*

URION, BISHOP & SLADKEY, (HOWARD F. BISHOP, and
GEORGE P. NOVAK, of counsel,) for appellants.

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL,
and L. LOUIS KARTON, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an action at law brought by plaintiffs-appellants
to recover damages for property taken and damaged by the
city of Chicago in connection with the construction of a
bridge and viaduct on Wabash avenue in said city. The
plaintiffs are the owners of the property situated at the
northwest corner of Austin avenue and Wabash avenue.
Prior to this improvement, Wabash avenue was known as
Cass street and Austin avenue was known as Hubbard
street. This property was improved with a four-story-and-
basement brick building used for warehouse purposes.

The property had a larger frontage upon Wabash ave-
nue than it had upon Austin avenue. This property had
been purchased by the plaintiffs, together with its improve-

ments in the year 1925, for the sum of $75,000. After that time they improved the property by insulating it and equipping it for a cold-storage warehouse. Prior to the construction of the viaduct, Wabash avenue was a 66-foot street with a 38-foot roadway and a 14-foot sidewalk. The level of the street was approximately 6 inches below the level of the sidewalks. Austin avenue was then at the same grade as Wabash avenue, as were the other east and west streets intersecting Wabash avenue and the north and south streets which ran parallel with it. Prior to the construction of the viaduct in 1930 there were many wholesale houses in that district. After the viaduct was built, Wabash avenue was depressed to a point 62 inches below the sidewalk level at the north end of this property and 33 inches below the sidewalk level at the south end.

Four pillars were constructed directly opposite this property in the sidewalk on Wabash avenue. Three of these pillars are about 36½ feet from each other and two of them are close together near the center of the property's frontage on Wabash avenue.

There was an alley in the rear of the property, which opened onto Wabash avenue, and the grade of this alley was depressed to a point 5 feet below the level of the sidewalk at the east line of the property on Wabash avenue and 2.3 feet at the west end. This made the alley 7 feet 3 inches below the alley shipping door of the building. At the southeast corner of this property Austin avenue was depressed 2 feet and sloped upward to its original grade 12 feet west of the west line of the property. In addition to the pillars in the sidewalk on the Wabash avenue side of the property, a row of pillars was constructed in the street opposite those on the sidewalk. These pillars rest on caissons dug down to solid rock, the caissons being about 100 feet deep. A stairway was built leading down from the upper level of Wabash avenue to Austin avenue. This stairway is directly in front of the southeast corner

of the plaintiffs' property and extends 30 feet in front of the property. An abutment was erected across Wabash avenue at Illinois street, which is one block north of the property, making it impossible to go north on Wabash avenue. Illinois street, one block north, was depressed about 9½ feet at Wabash avenue. Kinzie street, which is one block south of the property, was depressed about 7 feet at Wabash avenue. All of the grades in the east and west alleys in the neighborhood were also changed.

The plaintiffs' complaint contained twelve counts. The first count set forth the above facts and alleged that the depression of the existing roadway interfered with the best use of this property and depreciated its value. The second count alleged that damages were sustained by the construction of the retaining wall in East Illinois street across Wabash avenue, thereby permanently impairing the accessibility of the property. The third count alleged damages resulting from the construction of the viaduct 12 feet above the former level of Wabash avenue and the erection of three separate and distinct lines of concrete columns in front of plaintiff's property, interfering with the ingress to and egress from the premises. The fifth count alleged that the construction of the viaduct constituted a partial taking of plaintiff's property without compensation. The sixth count alleged defendant's duty and obligation to maintain the roadways at their former grades and that the viaduct was constructed for the accommodation of the railroad and that the construction caused the premises to become flooded and the foundations to become weakened, etc. The seventh count alleged that the construction of the caissons and large trenches weakened the foundations to the plaintiffs' building causing damages thereto. The twelfth count alleged damages because of the construction of the stairway on Austin avenue.

The defendant denied these claims for damages. The matter was tried before a jury. In the first trial there

was a disagreement. At the second trial the jury returned a verdict in favor of the city. The court, however, granted the plaintiffs' motion for a new trial, which action was affirmed by the Appellate Court. The case was then tried the third time and the jury returned a verdict in favor of the city. It is from this trial that the present appeal followed, the trial judge having refused to grant a new trial.

Plaintiffs have recited sixteen errors which they feel entitle them to a new trial. Many of these errors have been seriously argued but it is first proper to consider whether or not this court has jurisdiction to entertain this appeal. The sole ground for this court's jurisdiction would be that a freehold is involved or that a constitutional question is involved.

It was admitted, upon the trial, that the plaintiffs owned the fee of Wabash avenue and of Austin avenue to the center of those streets. Plaintiffs contend that the construction of the viaduct in the street and the sinking of the caissons therein was an additional servitude placed upon the fee which they owned and resulted in a taking of their property without just compensation. They have also contended that if this is not so they are then entitled to compensation, because the viaduct and the caissons were built for the accommodation of the Northwestern Railroad Company and, therefore, for a private purpose and for that reason the viaduct and caissons are an additional servitude. From the ordinance of the city providing for this improvement, it appears that the city made an agreement with the Northwestern Railroad Company wherein the city acquired an easement over the right of way of the Northwestern Railroad Company, and the Northwestern Railroad Company acquired rights in certain properties owned by the city. The net result was that the city would not have to condemn railroad property for this improvement but necessarily had to construct the improvement in such a way that it would not interfere with the use of the

railroad property, but . it did interfere with the use of plaintiffs' and other properties on Wabash avenue.

While neither party questions the jurisdiction of this court, it appears that this court has had before it a similar case in *Grunewald* v. *City of Chicago,* 371 Ill. 528, in which this court transferred the cause to the Appellate Court for lack of jurisdiction here. That case involved property in the same neighborhood and damages from the same improvement. In the opinion it is merely stated that it is an action for damages to lands by reason of the change of grade of streets, sidewalks, and alleys by reason of the construction of the viaduct and the construction of a ramp in the south half of East Kinzie street. In that case the plaintiffs recovered a verdict upon which judgment was entered. The city took an appeal to the Appellate Court, where the plaintiffs filed a motion to transfer the cause to the Supreme Court on the ground that the action was in the nature of a condemnation suit and under the Eminent Domain Act the appeal should have been taken to the Supreme Court. The cause was transferred to the Supreme Court and the Supreme Court remanded it to the Appellate Court. At page 532 this court, speaking of the plaintiffs' rights, stated, "They had a right to elect the remedy they thought best suited to the end sought, and satisfaction of the claim in one of the modes of recovery constitutes a bar to the other." The court further stated that plaintiffs could bring an action at law for damages, but that such an action would not become subject to the Eminent Domain Act. It thus appears that in the case at bar if the plaintiffs had merely asked for damages to their property which was not situated in the street this court would not have jurisdiction under the authority of the *Grunewald* case.

The next question to be considered is: Does the fact that plaintiffs argue the creation of an additional servitude upon their fee in the street give this court jurisdiction?

Plaintiffs insist that their constitutional rights were violated in that a portion of their property was taken for which no compensation was paid: The cases cited by plaintiffs do not support such contention and it is hard to distinguish this case from the *Grunewald case,* in that it does not appear that any additional servitude has been placed upon their fee in the street. The nearest case presented by plaintiffs is *Stack* v. *City of East St. Louis,* 85 Ill. 377, in which case the city authorized a bridge company to construct a bridge approach in a street. The superstructure of the approach was above the level of plaintiff's land and obstructed egress and ingress. The court permitted the plaintiff to recover because it stated that the city, in authorizing the bridge company to construct the approach, became responsible for all the damages resulting, even though the bridge was not owned by the city. That case does not hold that the construction of the bridge approach, under the circumstances of the case at bar, was an additional servitude. In the instant case the improvement is paid for by the city and while it might benefit the railroad company to a certain extent, the main purpose of the improvement was for public benefit. In order to say that the case at bar is similar to the *Stack case,* we must hold that the viaduct was, in fact, a railroad project, which we do not believe to be the fact.

In the case of *City of Park Ridge* v. *Wisner,* 253 Ill. 434, the village of Park Ridge attempted to construct a sewer in a public highway outside the limits of the village. The court held that the construction of the sewer outside of the village limits in the highway was an additional servitude and that the owner of the fee in the highway was entitled to compensation, since the village of Park Ridge had no rights in the highway outside of the village limits. This case is clearly distinguishable.

*Moore* v. *Gar Creek Drainage District,* 266 Ill. 399, is also cited by plaintiffs, but this case is not applicable be-

cause the drainage commissioners sought to construct a drain in a public highway without obtaining consent from the adjoining landowner. The court held that the highway commissioner could construct a drain for drainage of the highway, but could not grant the right to construct a drain for the use of adjoining lands.

*Board of Trade Telegraph Co.* v. *Barnett*, 107 Ill. 507, is distinguishable because the court held that the telephone company could not place telephone poles in the street without paying compensation to the owner of the fee. Also cited by the plaintiffs is *Chicago, Burlington and Quincy Railroad Co.* v. *City of Naperville*, 166 Ill. 87. In that case the city built a street across the railroad's right of way. The court held that the extension of a public highway across the right of way of a railroad, even though the railroad still could use the right of way, would take a portion of the right of way and that the railroad was entitled to compensation.

It is hard to see how the erection of the viaduct took any property of the plaintiffs. That it may have been damaged might be a proper question for a jury, but in our opinion no property was taken.

The determinative question is whether or not the erection of the viaduct constituted a normal street use. This court has held that the easement of the city for street purposes "is only for the use of ordinary travel such as we are accustomed to seeing on streets or highways." *Indianapolis, Bloomington and Western Railroad Co.* v. *Hartley*, 67 Ill. 439, 444.

The air rights above the street are subject to regulations by the city. No one can erect a sign over a street without complying with certain regulations of the city. The right to use the property under the street is also subject to regulations of the city. No one can place a tunnel under the street without complying with certain requirements of the city providing for the safety of the surfaces

of the street. When the city of Chicago was originally platted, the streets were not paved. It has never been contended that the city increased the servitude upon the underlying fee when it increased the thickness of the pavement on the street nor has it been contended that the city increased the servitude when it widened the pavement in the street and reduced the size of the sidewalks. In *Chicago, Burlington and Quincy Railroad Co.* v. *West Chicago Street Railroad Co.* 156 Ill. 255, the court held that the use of a street for the erection of a street railway did not increase the servitude and the abutting owner could recover no compensation for the damages to the fee resulting from such use, providing the right of ingress and egress is left reasonably free. The court also stated at page 267 that the laying of a street railway in the street must be regarded among the uses contemplated when the street was laid out.

We do not find that plaintiffs are entitled to compensation on the theory that there has been a new taking for an additional servitude because of the construction of the viaduct in Wabash avenue. The suit is not, therefore, one instituted under the Eminent Domain Statute, but is a common-law action for damages. Thus it is governed by rules of procedure and jurisdiction on appeal, as other common-law actions for damages. No question involving the Eminent Domain Act is presented by the record nor is any question raised which gives this court jurisdiction on direct appeal. *Grunewald* v. *City of Chicago,* 371 Ill. 528.

The case will be transferred to the Appellate Court, First District, with directions to pass upon the merits of the case on appeal from the superior court of Cook county.

*Cause transferred.*