(No. 28867.—

Marion O. Kane *et al.*, Appellants, *vs.* The City of Chicago, Appellee.

*Opinion filed November 21, 1945—Rehearing denied Jan. 17, 1946.*

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

This is an action at law commenced in the superior court of Cook county for the recovery of damages alleged to have been sustained by appellants as owners of real estate situated at the northwest corner of Wabash and Austin avenues, in Chicago, by reason of the construction by the city of a viaduct or bridge along Wabash avenue and across Austin avenue and the alley immediately adjoining appellants' property on the north. The property of appellants is a four-story-and-basement brick building, equipped and used as a cold-storage warehouse, with a frontage of 100 feet on Wabash avenue on the east, 50 feet on Austin avenue on the south, and 50 feet on an 18-foot alley on the north. The bridge spans the Chicago river at Wabash avenue, two blocks south of appellants' property, and continues north along Wabash avenue, passing appellants' building at about the second-story level, and coming to grade at Grand avenue, the second street north of Austin.

This case was formerly before this court (384 Ill. 361,) and before the Appellate Court (324 Ill. App. 585.) The opinions in these two cases contain a particular description of the property and the bridge or viaduct, and state practically all the information necessary to an understanding of the issues in the case. The case has been tried three times. The first jury disagreed. The second returned a verdict in favor of the city, but a new trial was granted,

and the Appellate Court denied leave to appeal from the order allowing the same. Accordingly, another trial was had and a verdict of not guilty returned. A direct appeal was taken to this court on the theory that the action was in the nature of a condemnation suit and, under the Eminent Domain Act, a direct appeal would lie; but this court, being of the opinion that no question involving the Eminent Domain Act was presented nor any question raised giving jurisdiction on direct appeal, transferred the cause to the Appellate Court for the First District, with directions to pass upon the merits. (*Kane* v. *City of Chicago,* 384 Ill. 361.) The Appellate Court affirmed the judgment of the lower court (*Kane* v. *City of Chicago,* 324 Ill. App. 585,) and a further appeal to this court has been allowed.

The first question presented is whether structural or physical damages to a building resulting from the construction of a public improvement may be offset by benefits or advantages accruing to the property from such improvement. The constitution provides that "private property shall not be taken or damaged for public use without just compensation." The rule has long been settled that if property is actually "taken" for a public use, this provision of the constitution requires that it shall be paid for in money regardless of benefits or advantages accruing to other property of the same owner of which he is not deprived; but that where property is not actually taken by the public for its use, the constitution requires that the owner is to be compensated in money for his damages thereto only to the extent that the benefits or advantages accruing to the property from the improvement are exceeded by the damages occasioned thereby.

In this respect our constitution affords redress in all cases where there is occasioned by a public improvement some direct disturbance of a right which is enjoyed by the owner in connection with his property and which gives to the property an additional value, and by reason of such

disturbance he has sustained special damage with reference to his property in excess of that sustained by the public generally. (*Eckhoff* v. *Forest Preserve Dist.* 377 Ill. 208; *Rigney* v. *City of Chicago,* 102 Ill. 64.) The disturbance need not be a physical disturbance of the tangible object of property rights, but must be a disturbance of a right which the owner enjoys in connection with his ownership of the tangible object. (*Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538.) Under the provision of the constitution prohibiting private property from being damaged for public use without the payment of just compensation, recovery may be had for damages to a building caused by the removal of lateral support resulting from the construction of a public improvement in an adjoining street. (*Cuneo* v. *City of Chicago,* 379 Ill. 488; *People ex rel. Tyson* v. *Kelly,* 379 Ill. 297; *Peck* v. *Chicago Railways Co.* 270 Ill. 34; *Barnard* v. *City of Chicago,* 270 Ill. 27; *Osgood* v. *City of Chicago,* 154 Ill. 194.) The right invaded in such case is, more accurately speaking, the right of the owner to the undisturbed use and enjoyment of his property without interference, and not the right of lateral support. (*Cuneo* v. *City of Chicago,* 379 Ill. 488; *Barnard* v. *City of Chicago,* 270 Ill. 27.) The case of *People ex rel. Tyson* v. *Kelly,* 379 Ill. 297, involved structural damage to the Monadnock building in Chicago, arising out of the construction of the Dearborn street subway. The owners in that case contended there was an actual taking of their property; that the work on the subway resulted in the floor of the building being cracked because of the disturbance and subsidence of a stratum of clay through which the subway was constructed. This court there held that on the facts alleged the case was not within the definition of a taking of property by invasion, although it was competent to consider the same as elements of damage to the property.

In every case where the owner of property is seeking to recover the just compensation guaranteed by the constitution for the lawful damaging of private property for public use, the burden is upon such owner to establish the existence and amount of the damage he claims; (*Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538;) and the measure of damages and the rules of evidence are the same in an action at law as in a condemnation proceeding. (*Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538; *Otis Elevator Co.* v. *City of Chicago,* 263 Ill. 419; *Aldis* v. *Union Elevated Railroad Co.* 203 Ill. 567; *Chicago and Eastern Illinois Railroad Co.* v. *Loeb,* 118 Ill. 203.) In either case the right to damages is the same and is based on the constitutional provision we have last mentioned. (*Illinois Power and Light Corp.* v. *Peterson,* 322 Ill. 342; *Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538.) The measure of damages is the depreciation in the market value of the property as a whole, caused by a direct physical disturbance of some right incident to its ownership. (*Peck* v. *Chicago Railways Co.* 270 Ill. 34; *Schroeder* v. *City of Joliet,* 189 Ill. 48; *Osgood* v. *City of Chicago,* 154 Ill. 194.) If there is no damage, neither the constitution nor the law authorizes a recovery; (*Schroeder* v. *City of Joliet,* 189 Ill. 48,) and it goes without saying that damages cannot exist if the value of the property is not lessened, but on the contrary is enhanced. (*Department of Public Works and Buildings* v. *Barton,* 371 Ill. 11.) Clearly, under the well-established rule that the damage to property not taken is the difference in the fair market value of the property as a whole, before and after the improvement, benefits may always be set off against damages, no matter what may be the amount of those damages. (*Osgood* v. *City of Chicago,* 154 Ill. 194.) And, as pointed out in the *Osgood case,* even though the buildings be wholly destroyed, if the value of the lot is increased to an amount

exceeding the value of the buildings it cannot be said that the property has been damaged. Structural injury to a building is an element proper to be considered in ascertaining what damages are sustained by the property. (*People ex rel. Tyson* v. *Kelly,* 379 Ill. 297.) Expenses reasonably and prudently incurred in good faith in making a proper effort to prevent or diminish injury to the building are considered a diminution in the fair cash market value of the real estate, and as such are proper items to be recovered. (*Cuneo* v. *City of Chicago,* 379 Ill. 488; *Peck* v. *Chicago Railways Co.* 270 Ill. 34.) Where expenses have been so incurred, an instruction declaring the difference in market value to be the measure of damages, but omitting any reference to such expenses as a part of the damages, is properly refused. *Peck* v. *Chicago Railways Co. 270 Ill.* 34.

, Appellants rely on the decision of the United States Supreme Court in *City of Chicago* v. *Taylor,* 125 U. S. 161, 8 S. Ct. 820, and the decision of this court in *Ohio and Mississippi Railway Co.* v. *Wachter,* 123 Ill. 440. In the first of these cases the United States Supreme Court recognized and reaffirmed the doctrine, announced in *Rigney* v. *City of Chicago,* 102 Ill. 64, *Pumpelly* v. *Green Bay Canal Co.* 80 U. S. 166, and numerous other cases, that, in order for there to be a "taking" of property in the constitutional sense, there must be a physical invasion of the real estate; but, as that court subsequently stated in *United States* v. *Lynah,* 188 U. S. 445, 23 S. Ct. 349; in considering the scope and effect of the holding in the *Taylor case,* decided the case upon the ground that a new rule was established by the Illinois constitution of 1870, which provided that private property shall not be "damaged" for public use without just compensation. The city, in the *Taylor case,* contended that, if liable at all, it was only liable for such damage as was done to the market value of the property by rendering access to it difficult or inconvenient. The Su-

preme Court held there was no substantial error committed to the prejudice of the city in the giving of instructions, the lower court, in different forms of expression, having said to the jury that the question was whether by reason of the construction of the viaduct, the value, that is the market price, of the property had been diminished.

The case of *Ohio and Mississippi Railway Co.* v. *Wachter,* 123 Ill. 440, cited by appellants, was an action for damages to the property of the plaintiff occasioned by the negligence of the railroad company in the construction of its road. The *Wachter case* defines the distinction between that class of cases where the damage sustained is due to the negligent and improper construction of a public improvement and the class of cases where damages result from a public improvement which was constructed without negligence and in a proper and lawful manner; and points out that it is to the latter class only that the Eminent Domain Act has reference. It does not hold, as counsel suggest, that permanent structural damage to property is equivalent to a "taking" within the meaning of the constitution and therefore the owner may have such damage assessed as for a "taking" by the public authority making the improvement; for, although it is there said that to permanently damage land is practically taking it to the extent its uses are impaired, this statement is immediately followed and qualified by the further statement that such damaging is "not a taking in the limited sense in which that term is used in our statute." The *Wachter case* is not in point and has no application whatever to the present case.

Without further citation of authority, it is sufficient to say that in our opinion the evidence in the present case shows that there has been no "taking" of appellants' property within the meaning of that term as used in the constitution and in the Eminent Domain Act.

It is contended by appellants that prejudicial error was committed in the admission of testimony. One O'Donovan,

a witness for the city, testified as to statements made to him by other persons and conversations had by him with such persons concerning the age of the building, and that, based entirely upon such conversations, it was his opinion that the building was erected in 1878. Appellants moved to strike his testimony as to the age of the building, but the motion was overruled. This was error. The evidence was clearly incompetent. It was merely hearsay and should have been stricken. To meet this evidence appellants introduced as an exhibit a party-wall agreement executed on May 3, 1884, showing a three-story building on appellants' premises at that time, and attempted, without success, to introduce an atlas of the city of Chicago, showing a three-story building on appellants' lot in 1891; and appellee contends that by offering this testimony appellants waived their objection to the evidence of O'Donovan as to the age of the building. The trial court having denied appellants' motion to strike O'Donovan's evidence, it was not error for appellants to offer evidence of the same character in rebuttal; and the offering of such evidence by appellants did not estop or bar them from insisting upon the error committed by the court in refusing to strike the evidence objected to. *Chicago City Railway Co.* v. *Uhter,* 212 Ill. 174.

In aid of the city's contention that any structural damage to the building was the result of overloading the building in its use as a warehouse or storage plant, the city introduced in evidence a letter from the building department of the city to the Monarch Refrigerating Company, appellants' tenant, dated August 1, 1929, notifying the addressee to "distribute concentrated load on all floors so as not to exceed amount allowed by load cards," and also a letter from the building department of the city to the same tenant of appellants, dated May 15, 1930, directing it to "post approved load cards on all floors." Appellants were, in no manner whatever, connected with these

letters. As to them the letters were mere hearsay, and were neither binding upon them nor admissible in evidence against them. The admission in evidence of these letters was highly prejudicial to appellants, in view of the conflict in the proof upon the question of whether the structural damage to the building was due to its overloading or caused as a result of the public improvement. Counsel for the city, in cross-examining the witness Kuehl about an inspection of the building which he had made in 1929, at the request of an insurance company insuring the merchandise in the building, was permitted, over objection, to ask this question: "Did you, or did you not, have with you a notice from the building department of the city of Chicago, signed by one Joseph E. O'Donnell, inspection date February 17, 1928, addressed to the Monarch Refrigerating Company, building C, in which it was indicated that all floors were overloaded pursuant to section 462 of the municipal code of the city of Chicago?" This was improper cross-examination. It implied that there had been overloading and that the witness's inspection of the building was made because of such overloading. This cross-examination, coupled with the introduction in evidence of the notice mentioned, although subsequently withdrawn when objected to, and with the admission in evidence of the two letters of August 1, 1929, and May 15, 1930, to the Monarch Refrigerating Company, was well calculated and designed to impress upon the minds of the jurors the belief that the structural damage to the building was caused by overloading.

William Kaplan, a witness for the city, was permitted, over objection, to testify that property to the south across the river had been improved "tremendously" by the Wacker Drive improvement. The object of this testimony was, without doubt, to lead the jury to believe that appellants' property was likewise benefited by the Wabash avenue bridge improvement in question, and was an attempt to

prove benefits in this case by the proof of benefits to other property from other improvements. The admission of this testimony was error. *City of East St. Louis* v. *Vogel,* 276 Ill. 490; *Illinois, Iowa and Minnesota Railway Co.* v. *Freeman,* 210 Ill. 270.

The testimony of the witnesses in this case bearing upon the questions both as to the existence and the cause of appellants' damages is contradictory and conflicting; and in this condition of the proof, the errors in the admission of evidence cannot be disregarded. In our opinion, the motion for a new trial should have been granted. Accordingly, the judgments of the Appellate Court for the First District and superior court of Cook county are reversed and the cause remanded to the superior court for a new trial.

*Reversed and remanded.*

Mr. JUSTICE SMITH, specially concurring:

I concur only in the result reached in this opinion.