# Illinois Official Reports

## Supreme Court

*Hampton v. Metropolitan Water Reclamation District*, 2016 IL 119861

| | |
|---|---|
| Caption in Supreme Court: | JENICE HAMPTON *et al.*, Appellees, v. METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, Appellant. |
| Docket No. | 119861 |
| Filed | July 8, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Ronald M. Hill, Lisa Luhrs Draper, James J. Zabel and Ellen M. Avery, of Chicago, for appellant. |
| | Glen J. Dunn, Jr., and Angel P. Bakov, of Glen J. Dunn & Associates, LTD., and Jeffrey Grant Brown, all of Chicago, for appellees. |
| | Eric G. Patt and Richard Lee Stavins, of Robbins, Salomon & Patt, LTD., of Glenview, for *amicus curiae* Village of Glenview. |
| | Roy M. Harsch and John A. Simon, of Drinker Biddle & Reath LLP, of Chicago, for *amicus curiae* Illinois Association of Wastewater Agencies. |

Jenifer L. Johnson, of Springfield, for *amicus curiae* Illinois Municipal League.

Justices

CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Thomas, Karmeier, and Theis concurred in the judgment and opinion.

Justice Burke specially concurred, with opinion, joined by Justices Freeman and Kilbride.

## OPINION

¶ 1    Plaintiffs, a class of property owners, filed complaints against the Metropolitan Water Reclamation District of Greater Chicago (the District), based on allegations of flooding on their properties following a rainstorm. The circuit court consolidated the complaints. Plaintiffs assert that the District caused the flooding by diverting stormwater into nearby creeks. Plaintiffs claim that the flooding constitutes a taking for which they are entitled to just compensation under the Illinois takings clause. The District moved to dismiss the consolidated complaint based on this court's decision in *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948). The District contends that, based on *Pratt*, a temporary flooding can never constitute a taking under the Illinois Constitution. More recently, however, the United States Supreme Court concluded that temporary flooding can constitute a taking under the federal constitution. *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. ___, 133 S. Ct. 511 (2012). The Cook County circuit court denied the District's motion to dismiss the Illinois takings clause claim and certified the following question pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010): "Does *Arkansas Game and Fish Commission v. U.S.*[,] 133 S. Ct. 511 (2012), overrule the Illinois Supreme Court's holding in *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948)[,] that temporary flooding is not a taking?"

¶ 2    The appellate court recognized that the Illinois takings clause provides broader protection than the federal takings clause but did not address whether a "taking" is defined in the same way under each clause. The appellate court interpreted *Pratt* as establishing a "blanket temporary-flooding exception" and held that *Arkansas Game & Fish Comm'n* overruled *Pratt* to the extent that *Pratt* held a temporary flooding could never be a compensable taking. We allowed defendant's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Jan. 1, 2015).

¶ 3                                   BACKGROUND

¶ 4    Plaintiffs are property owners and residents of the villages of Bellwood, Hillside, and Westchester. These villages are located within Cook County and within the territory for which the District is responsible for stormwater management. On or about July 23-24, 2010, Cook County experienced a heavy rainfall. Plaintiffs allege that, in response to the rain, defendant:

(1) closed the Lockport Lock and Dam floodgate to the Des Plaines River, which affected the water levels on Lower Salt Creek, Addison Creek, and the Lower Des Plaines River; (2) closed the locks to Lake Michigan at the Chicago Water Control Works, which affected the water level of the Lower Des Plaines River; (3) discharged excess stormwater runoff from the O'Hare South Detention Basin, the O'Hare North Retention Pond, and Touhy Avenue Flood Control Reservoir Cells 1 and 2 into the surrounding waterways, which caused an increase in flow and volume in waterways upstream and downstream of Hillside, Bellwood, and Westchester; (4) pumped stormwater into Addison Creek, which caused an increase in flow and volume in Addison Creek; and (5) pumped stormwater from the Mayfair Reservoir into Lower Salt Creek, which caused an increase in flow and volume in Lower Salt Creek. Plaintiffs also allege that on or before July 23 and 24, 2010, the District was engaged in maintenance activity within the Lower Salt Creek and Addison Creek channels. Plaintiffs claim that, as the result of these activities, Addison Creek and Lower Salt Creek overtopped their banks and caused flooding on properties owned and occupied by plaintiffs. Plaintiffs also allege these actions caused sewers to back up, which caused additional flooding.

¶ 5    In asserting their claim of a violation of the Takings Clause, plaintiffs allege that their homes, personal belongings, basements, and other private property were damaged or destroyed as a result of the flooding. Plaintiffs also allege that members of the class were deprived of the use of their homes because of the backup from the public sewers and overtopping of the creeks. Plaintiffs' complaint does not further explain how the flooding deprived members of the use of their homes, the extent of the damage, how long the properties remained flooded, or whether the damage caused by the flooding has been or could be repaired.

¶ 6    The District moved to dismiss the complaint under sections 2-615 and 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-615, 2-619.1 (West 2014). The circuit court granted the motion as to count I and thereby dismissed plaintiffs' claim based on a violation of the Metropolitan Water Reclamation District Act. That claim is not at issue in this appeal. Next, the circuit court denied the District's motion to dismiss plaintiffs' takings clause claim, based on its finding that plaintiffs sufficiently alleged a physical invasion of their properties as a result of the District's actions. The circuit court then granted the District's motion to certify the following question for interlocutory appeal under Illinois Supreme Court Rule 308: "Does *Arkansas Game and Fish Commission v. U.S.*[,] 133 S. Ct. 511 (2012), overrule the Illinois Supreme Court's holding in *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948)[,] that temporary flooding is not a taking?" See Ill. S. Ct. R. 308 (eff. Feb. 26, 2010).

¶ 7    The appellate court declined to consider the facts of the case and addressed only the certified question. The appellate court first compared the takings clause of the Illinois Constitution with the takings clause in the fifth amendment to the U.S. Constitution. The court found that the "Illinois takings clause provides protection greater than that of its federal counterpart." 2015 IL App (1st) 132317, ¶ 14 (citing *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir. 1998)). The court concluded that, "to the extent that *Pratt* holds that temporary flooding of property can never be a compensable taking under the Illinois Constitution, it is effectively overruled by *Arkansas Game & Fish Comm'n*." *Id.* ¶ 26. The appellate court remanded the case to the circuit court to address the merits of plaintiffs' complaint in light of this conclusion. The District filed a petition for leave to appeal to this court, which we allowed. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015). This court also granted leave to the Illinois Association of Wastewater Agencies, the Illinois Municipal League, and the

Village of Glenview to file *amicus curiae* briefs.

¶ 8                                ANALYSIS

¶ 9       This court is now asked to review the appellate court's answer to the certified question—whether *Arkansas Game & Fish Comm'n* overruled the Illinois Supreme Court's holding in *Pratt* that temporary flooding is not a taking. Our review of the appellate court's ruling on certified questions is governed by Rule 308. *DeBouse v. Bayer*, 235 Ill. 2d 544, 550 (2009). We review certified questions, which are by definition questions of law, *de novo*. *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 9. Plaintiffs' claim is based solely on the Illinois takings clause. This court is the final arbiter of state law. *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 79. The U.S. Supreme Court has no authority to overrule a state court's declaration of the meaning of state law. *Id.*; see *Bute v. Illinois*, 333 U.S. 640, 668 (1948) ("The Supreme court of Illinois has affirmed both sentences ***. It has thus conclusively established their compliance with Illinois law."). Therefore, the Supreme Court's decision in *Arkansas Game & Fish Comm'n* could not overrule a decision of this court regarding the Illinois takings clause.

¶ 10      However, Illinois employs a limited lockstep approach when interpreting cognate provisions of the Illinois and U.S. Constitutions. Under this approach, there are three possible scenarios. *People v. Caballes*, 221 Ill. 2d 282, 289 (2006). If a provision is unique to the state constitution, it must be interpreted without reference to a federal counterpart. *Id.* If a provision in the state constitution is similar to a provision in the federal constitution, but differs from it in some significant respect, the language of the provision must be given effect. *Id.* at 289-90. Lastly, if a provision of the state constitution is identical to or synonymous with the federal constitutional provision, federal authority on the provision prevails, unless "the language of our constitution, the constitutional convention debates and committee reports, or state custom and practice *** indicate that the provisions of our constitution are intended to be construed differently." *Hope Clinic for Women, Ltd.*, 2013 IL 112673, ¶ 83. Under this approach, this court will follow the lead of the United States Supreme Court when it publishes decisions regarding a constitutional provision if it is determined that the relevant provision is to be interpreted as synonymous with its Illinois counterpart. The circuit court should have avoided the use of the term "overruled" and drafted its certified question in a way that would better reflect the role of federal precedent in Illinois law. Nevertheless, we will consider whether the decision in *Arkansas Game & Fish Comm'n* ought to be incorporated into this court's Illinois takings clause jurisprudence and, if so, whether that decision conflicts with this court's decision in *Pratt*.

¶ 11      The first step to resolving this question is to determine whether the takings clauses of the Illinois and U.S. Constitutions are synonymous. The Illinois takings clause states: "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." Ill. Const. 1970, art. I, § 15. The federal takings clause, in relevant part, provides: "nor shall private property be taken for public use, without just compensation." U.S. Const., amend. V. Clearly, the takings clause is not unique to the Illinois Constitution and therefore does not fall within the first category described above.

- 4 -

¶ 12      The District contends that, because the language of the Illinois clause differs from the language of the federal clause, the two clauses should not be interpreted as meaning the same thing. The relevant difference in the two clauses is the explicit inclusion in the Illinois clause of protection for property that is "damaged" and the requirement that compensation be determined "by a jury as provided by law." Plaintiffs alleged that their properties were both taken and damaged. However, the certified question addresses only property that is taken, and thus we examine first what constitutes a taking under Illinois law in order to determine whether *Arkansas Game & Fish Comm'n* is relevant to a takings claim analysis under Illinois law.

¶ 13      We find no convincing evidence that the delegates to the Illinois constitutional conventions intended for a "taking" to be defined differently from its federal counterpart. See *Forest Preserve District v. West Suburban Bank*, 161 Ill. 2d 448, 458 (1994) (" '[T]he fifth amendment's prohibition of the taking of private property for public use without just compensation does not preclude the State from taking private property, but only requires the State pay compensation.' *** We interpret our present State constitutional protection against taking property without just compensation in the same way." (quoting *Beverly Bank v. Illinois Department of Transportation*, 144 Ill. 2d 210, 229-30 (1991)); *Horn v. City of Chicago*, 403 Ill. 549, 554 (1949) (noting that the same test is applied by the Illinois Supreme Court and the federal courts to determine whether real estate has been taken for public use within the meaning of the takings clauses); see also *City of Chicago v. ProLogis*, 236 Ill. 2d 69, 77, 80-81 (2010) (analyzing takings claims under the Illinois and United States Constitutions in the same way and declining to consider whether the Illinois clause provides greater protection, because the party making the argument failed to raise it in petition for leave to appeal and thus the argument was forfeited); *Cwik v. Giannoulias*, 237 Ill. 2d 409, 417-19 (2010) (analyzing takings claims based on the state and federal constitutions in the same manner); *Canel v. Topinka*, 212 Ill. 2d 311, 331-32 (2004) (same); *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 130 (2004) (same); *Southwestern Illinois Development Authority v. National City Environmental, L.L.C.*, 199 Ill. 2d 225, 235-42 (2002) (same).

¶ 14      A review of the transcripts from the Constitutional Convention of 1870, when the "damage" prong of the Illinois takings clause was added, indicates no intent on the part of the convention delegates to deviate from the federal definition of a taking. The amendment was made to provide broader protection and establish a constitutional remedy for property owners whose real estate is damaged but not taken as a result of public improvements. II Debates and Proceedings of the Constitutional Convention of the State of Illinois 1578 (Apr. 29-30, 1870) ("This is an innovation—a new principle. It is for the purpose *** of protecting persons whose property is not immediately taken by the exercise of the right of eminent domain, but by reason of the adjoining property being taken or a street being leveled or graded up so that their property is injured."). Similarly, the discussion of the takings clause at the 1970 convention does not reveal any intention to interpret a "taking" as something other than what is recognized as a taking under the federal constitution. 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1553 ("Presently in our constitution, we have a provision that you can't take a man's property without paying him for it. We also have a provision—which is different from most states and different from federal rule—that you can't damage a man's property without paying him for it.").

¶ 15      Furthermore, there is no evidence that state custom and practice dictate a different analysis under state and federal law. The District and its *amici* assert that there is a state practice of

applying a blanket rule that temporary flooding cannot be a taking. This court has never applied such a blanket rule, and only in *Luperini v. County of Du Page* and in this case has the appellate court stated such a categorical ban. Compare *Luperini v. County of Du Page*, 265 Ill. App. 3d 84, 89 (2d Dist. 1994) (summarizing *Pratt* as holding that, "[w]here the public improvement causes only temporary accumulations of water on the subject property, a taking has not occurred"), with *Pineschi v. Rock River Water Reclamation District*, 346 Ill. App. 3d 719, 726-27 (2d Dist. 2004) (holding that the plaintiff had a valid taking claim where he was forced to evacuate his house for several days due to a government-caused sewer backup, despite the fact that the taking was temporary); see *In re Petition of Commissioners of Sny Island Levee Drainage District*, 130 Ill. App. 3d 959, 967 (4th Dist. 1985) (noting that, in *Pratt*, "[t]he supreme court affirmed, noting that none of plaintiffs' property was taken by the improvement and that the damages complained of were not of a sufficiently lasting nature to amount to a taking"); *County of Winnebago v. Kennedy*, 60 Ill. App. 2d 408, 412 (2d Dist. 1965) ("The diversion of surface water onto property by means of altering the natural drainage can constitute a taking. [Citations.] Whether the diversion of water onto property constitutes a 'taking' of the property, or merely 'damage' to it, depends, obviously, upon the facts of the case."); see also *Rockstead v. City of Crystal Lake*, 486 F.3d 963, 967 (7th Cir. 2007) ("The Supreme Court of Illinois has not weighed in on the issue since the *Pratt* case in 1948, more than half a century ago. It is premature to conclude that if faced with a case such as this it would deny relief on the basis of a mechanical application of the 'temporary accumulations' doctrine.").

¶ 16    Therefore, United States Supreme Court decisions regarding what constitutes a taking are relevant for purposes of determining whether a plaintiff has sufficiently alleged a taking under the Illinois Constitution. See *International College of Surgeons*, 153 F.3d at 363 ("Although it is true that the Illinois Takings Clause provides protection greater than that provided by its federal counterpart *** [t]he greater protection provided by the Illinois Takings Clause stems from the fact that the clause not only guards against a governmental taking of private property but also guards against governmental 'damage' to private property. *** If the plaintiff cannot make this showing, then his claim is analyzed under the same standard employed under the federal constitution ***.").

¶ 17    The United States Supreme Court's decision in *Arkansas Game & Fish Comm'n* and the Illinois Supreme Court's decision in *Pratt* both address whether temporary flooding constitutes a taking under the United States and Illinois Constitutions, respectively. Plaintiffs assert that the rule in *Arkansas Game & Fish Comm'n* is directly contrary to the rule in *Pratt*. The District contends that these cases are distinguishable. We conclude these cases are consistent with one another.

¶ 18    In *Pratt*, the plaintiffs alleged that their properties were damaged when an old viaduct was removed and replaced. 399 Ill. at 248. In replacing the viaduct, the grade of the street bordering the plaintiffs' properties was changed. *Id.* at 249. The plaintiffs alleged that, as a result, surface water ran into their buildings, requiring them to change the floor levels in order to continue using the buildings. *Id.* The plaintiffs filed a petition for a writ of *mandamus* requiring the city and related agencies and officials to file a petition to determine damages. *Id.* The defendants refused to pay the damages or institute eminent domain proceedings. *Id.* The supreme court noted that "[i]t [was] not alleged that the[ ] waters accumulate and remain on the premises and thereby prevent the use thereof," and that the "[r]unning surface waters are not constantly

- 6 -

present but are temporary and come as a result of rain or snow." *Id.* at 251. Based on these findings, the court concluded that "[t]he allegations [were] not sufficient to indicate a physical invasion \*\*\* and there [was] no showing that any property was actually taken in connection with the improvement." *Id.* at 252. Therefore, the court affirmed the circuit court's dismissal of the petition for a writ of *mandamus*. *Id.*

¶ 19    The District and the appellate court read *Pratt* as establishing a bright-line rule that temporary flooding is not a taking. 2015 IL App (1st) 132317, ¶ 25. As already discussed, this court has never viewed *Pratt* as stating a categorical bar, and neither have most panels of our appellate court.

¶ 20    The court in *Pratt* merely held that the flooding that occurred in that case did not cause the type of damage to the property that would constitute a taking. *Pratt*, 399 Ill. at 252 ("In [*Kane v. City of Chicago*, 392 Ill. 172 (1945),] we said, 'We are of the opinion that the case before us does not, on the facts alleged, bring plaintiff's case within the definition of a taking of property by invasion \*\*\*.' What was there said applies here and in our opinion the allegations of the amended petition are not sufficient to show a taking of any of appellants' property."). In particular, the *Pratt* court's focus on the issue of whether the damage "prevent[ed] the use" of the property indicates that damage that does prevent the use of property may constitute a taking. *Id.* at 251.

¶ 21    Consistent with this conclusion, the United States Supreme Court in *Arkansas Game & Fish Comm'n* held that temporary flooding can give rise to a takings claim when the flooding directly and immediately interferes with the owner's enjoyment and use of the land. 568 U.S. at ___, 133 S. Ct. at 519. In *Arkansas Game & Fish Comm'n*, the United States Army Corps of Engineers released upstream waters in such a way that the Commission's property was flooded during the peak growing season for timber. *Id.* at ___, 133 S. Ct. at 516. The flooding was temporary but recurred consistently over a period of six years. *Id.* at ___, 133 S. Ct. at 516. The Commission owned the property for the purpose of growing timber and to protect the wildlife that lived there. *Id.* at ___, 133 S. Ct. at 515-16. The flooding made it impossible for timber to grow productively on the property, and, as a result, the wildlife ecosystem was destroyed. *Id.* at ___, 133 S. Ct. at 517. The Commission filed suit against the government, claiming the temporary but recurring flooding was a taking. *Id.* at ___, 133 S. Ct. at 516. The Supreme Court noted that it has previously held that government-induced flooding can constitute a taking (*Pumpelly v. Green Bay Co.*, 80 U.S. 166 (1871)), that seasonally recurring flooding could constitute a taking (*United States v. Cress*, 243 U.S. 316 (1917)), and that "[a] temporary takings claim could be maintained as well when government action occurring outside the property gave rise to 'a direct and immediate interference with the enjoyment and use of the land.' " *Arkansas Game & Fish Comm'n*, 568 U.S. at ___, 133 S. Ct. at 519 (quoting *United States v. Causby*, 328 U.S. 256, 266 (1946)). Thus, the Court concluded that "government-induced flooding of limited duration may be compensable." *Id.* at ___, 133 S. Ct. at 519.

¶ 22    Neither *Arkansas Game & Fish Comm'n* nor *Pratt* imposes a bright-line rule or exception regarding whether temporary flooding constitutes a taking. *Id.* at ___, 133 S. Ct. at 519 ("No decision of this Court authorizes a blanket temporary-flooding exception to our Takings Clause jurisprudence, and we decline to create such an exception in this case."). Both indicate that courts must look to the facts of each case to determine whether the property owner's use

and enjoyment of the property has been diminished or destroyed. Therefore, these cases are consistent, and both decisions should inform Illinois courts when addressing takings claims based on temporary flooding. To the extent the appellate court in *Luperini* held that temporary flooding could not constitute a taking, that decision is overruled. *Luperini*, 265 Ill. App. 3d at 89.

¶ 23    Having established that in some circumstances temporary flooding can constitute a taking, the court is now faced with the question of whether plaintiffs sufficiently alleged a violation of the Illinois takings clause. " 'When this court accepts an appeal involving a question of law identified under Rule 308, interests of judicial economy and the need to reach an equitable result oblige us to go beyond the question of law presented and consider the propriety of the order that gave rise to the appeal.' " *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153 (2007) (quoting *Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995)). "Determining whether there has been an actionable taking is a question of law," which this court reviews *de novo. ProLogis*, 236 Ill. 2d at 77. The District challenged plaintiffs' takings clause claim by filing a motion to dismiss. "The critical inquiry in determining whether a pleading should be dismissed *** is whether the allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Sorrells v. City of Macomb*, 2015 IL App (3d) 140763, ¶ 22 (citing *Kanerva v. Weems*, 2014 IL 115811, ¶ 33).

¶ 24    The court has defined a taking as a physical invasion of private property or the radical interference with a private property owner's use and enjoyment of the property. *Forest Preserve District*, 161 Ill. 2d at 456-57. This court has also held that a taking occurs when real estate is physically invaded "by superinduced additions of water *** so as to effectually destroy or impair its usefulness." *Horn*, 403 Ill. at 554. Flooding that does not cause this level of destruction is not a taking. *Pratt*, 399 Ill. at 252; see *Hartwig v. United States*, 485 F.2d 615, 619 (Ct. Cl. 1973) (" 'The essential inquiry [in taking cases arising out of a flood situation] is whether the injury to the claimant's property is in the nature of a tortious invasion of his rights or rises to the magnitude of an appropriation of some interest in his property permanently to the use of the Government.' " (quoting *National By-Products, Inc. v. United States*, 405 F.2d 1256, 1273-74 (Ct. Cl. 1969))).

¶ 25    The Court in *Arkansas Game & Fish Comm'n* set forth additional factors that assist in determining whether a temporary flooding constitutes a taking. 568 U.S. at ___, ___, 133 S. Ct. at 519, 522-23; see *Sorrells*, 2015 IL App (3d) 140763, ¶ 27. As we have already determined that a "taking" is defined in the same way under federal and state law, we find the factors used by the federal court helpful in analyzing a taking claim under the Illinois Constitution. We recognize that *Arkansas Game and Fish Comm'n* had not yet been decided when plaintiffs filed their complaints. However, because the incorporation of this decision does not involve a significant change in Illinois law, we find it appropriate to consider these factors when reviewing plaintiffs' consolidated complaint. These factors include the time and duration of the flooding, whether the invasion of the property was intentional or whether it was a foreseeable result of an authorized government action, and the character of the land and the owner's reasonable investment-backed expectations regarding the land's use. *Arkansas Game & Fish Comm'n*, 568 U.S. at ___, 133 S. Ct. at 522-23.

¶ 26    The complaint in this case addresses only one instance of flooding. Plaintiffs have not alleged that the flooding is recurring or that the water remained on their properties for a

- 8 -

prolonged period of time. They do not allege that the damage caused could not be satisfactorily repaired. In their brief before this court, plaintiffs state that they are seeking "compensatory damages for the value of lost possessions and the cost of repairing their homes." Plaintiffs have not addressed whether the flooding was intentional or whether the District knew or should have known that the flooding of plaintiffs' properties would occur. In their brief, plaintiffs assert that the District's acts were intentional and imply that the District acted to avoid flooding at O'Hare International Airport. Their complaint does not, however, address whether the District intended or knew that the diversion would cause the creeks to overflow or otherwise that the actions taken would cause the flooding. Finally, the properties involved are residential properties. Therefore, plaintiffs have an investment-backed expectation that they will be able to use their properties for the purpose of maintaining homes. However, plaintiffs' complaint states only that "Members of the class were deprived of the use of their homes." They offer no explanation for how they were deprived of the use of their home or otherwise support this claim. Therefore, plaintiffs' amended complaint fails to sufficiently allege that the temporary flooding that occurred in this case constitutes a taking under the Illinois Constitution.

¶ 27        Alternatively, plaintiffs assert in their complaint that they are entitled to compensation under the takings clause for damage to their properties. As discussed, the Illinois takings clause reaches beyond the scope of the federal takings clause and provides a remedy for owners whose property is damaged by some government action. When "the owner of property is seeking to recover the just compensation guaranteed by the constitution for the lawful damaging of private property for public use, the burden is upon such owner to establish the existence and amount of the damage he claims." *Kane v. City of Chicago*, 392 Ill. 172, 177 (1945). Property is considered damaged for purposes of the takings clause if there is "any direct physical disturbance of a right, either public or private, which an owner enjoys in connection with his property; a right which gives the property an additional value; a right which is disturbed in a way that inflicts a special damage with respect to the property in excess of that sustained by the public generally." *Citizens Utilities Co. of Illinois v. Metropolitan Sanitary District of Greater Chicago*, 25 Ill. App. 3d 252, 256 (1974) (discussing the definition of "damaged" established in *Rigney v. City of Chicago*, 102 Ill. 64 (1881)). Where no property is actually taken, an owner of damaged property may assert a right to compensation in an action at law. *Illinois Power & Light Corp. v. Peterson*, 322 Ill. 342, 347 (1926). Whether claimed by the owner as a plaintiff in an action at law or as a defendant in an eminent domain proceeding, "the right to damages is the same and is based on the [takings clause]." *Id.*

¶ 28        The certified question on appeal is limited to the meaning of "takings" alone, not of damaged property within the Illinois takings clause. Therefore, the lower courts have not yet had the opportunity to review whether plaintiffs have alleged a sufficient claim for compensation for damaged property. We decline to review the merits of this argument at this time.

¶ 29        We reverse the judgment of the appellate court and remand this cause to allow the circuit court to consider the entirety of plaintiffs' claim in light of this opinion. Plaintiffs should have the opportunity to amend their takings clause claim on remand.

CONCLUSION

¶ 31 The takings clause of the Illinois Constitution provides greater protection for property owners than its counterpart in the United States Constitution, because it provides a remedy for property that is damaged, in addition to property that is taken. However, what constitutes a taking is the same under both clauses. Therefore, the Supreme Court's holding in *Arkansas Game & Fish Comm'n* is relevant to the determination of whether government-induced temporary flooding is a taking pursuant to the Illinois Constitution.

¶ 32 The holding in *Arkansas Game & Fish Comm'n* does not conflict with the holding in *Pratt* to any extent, because the court in *Pratt* did not hold that temporary flooding can *never* constitute a taking. The court in *Pratt* merely held that the flooding that occurred in that case did not rise to the level of a taking. Similarly, the facts alleged in plaintiffs' amended complaint are not sufficient to allege a taking under the Illinois takings clause. The complaint does not allege that the flooding "radically interfered" with plaintiffs' use and enjoyment of their properties.

¶ 33 Plaintiffs alternatively claim that the flooding damaged their properties and therefore that they are entitled to compensation under the Illinois takings clause. The Illinois takings clause provides that the owner of damaged property has a right to just compensation, but the parties have not briefed this court on the issues surrounding plaintiffs' damage claim. We remand this case to the circuit court for further proceedings consistent with this opinion.

¶ 34 Reversed and remanded with directions.

¶ 35 JUSTICE BURKE, specially concurring:

¶ 36 While I agree with the judgment rendered in this case, my reasoning differs in certain respects from that of the majority.

¶ 37 At the outset, the question certified by the circuit court asks whether the United States Supreme Court, in *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. ___, 133 S. Ct. 511 (2012), "overruled" this court's decision in *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948). *Supra* ¶ 2. There is a problem with this question that is immediately apparent. *Arkansas Game & Fish Comm'n* was a decision that interpreted the takings clause of the federal constitution (U.S. Const., amend. V). *Pratt*, on the other hand, was a decision that interpreted the takings clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 15).

¶ 38 Under the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), the United States Supreme Court can, through its interpretation of the federal constitution, establish separate federal law that must be given effect over any conflicting state law. But the Supreme Court has long held that it has no authority to overrule a state court's declaration of the meaning of state law. See, *e.g.*, *North Carolina v. Butler*, 441 U.S. 369, 376 n.7 (1979) ("this Court must accept whatever construction of a state constitution is placed upon it by the highest court of the State"); *Garner v. Louisiana*, 368 U.S. 157, 166 (1961); *Murdock v. City of Memphis*, 87 U.S. (20 Wall.) 590 (1874). As Judge Easterbrook has noted, "a federal court may not disagree with the state courts' construction of state law. [Citation.] State law means what state judges say it means, just as federal law means (for the purposes of judges of inferior federal courts) what the Supreme Court of the United States concludes it means." *United States ex rel. Garcia v. O'Grady*, 812 F.2d 347, 356 (7th Cir. 1987) (Easterbrook, J., concurring).

¶ 39   To warrant certification under Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010), the proffered question must be one over "which there is substantial ground for difference of opinion." Because it is black letter law that the United States Supreme Court has no authority to overrule this court's interpretation of our state constitution, there can be no "substantial ground for difference of opinion" over whether *Arkansas Game & Fish Comm'n* overruled *Pratt*. The circuit court therefore erred in certifying the question.

¶ 40   Plaintiffs' complaints alleged only a violation of the takings clause of the Illinois Constitution. The circuit court believed that this court's interpretation of the Illinois takings clause in *Pratt* differed from the United States Supreme Court's interpretation of the federal takings clause in *Arkansas Game & Fish Comm'n*. Given this fact, the circuit court was bound to follow and apply Illinois law to plaintiffs' claims. Plaintiffs were always free to file separate federal claims.[1]

¶ 41   Because the circuit court erred in certifying the question, the appellate court was bound to dismiss the appeal. However, since the issue is now before us, the question remains whether this court should now incorporate the reasoning of *Arkansas Game & Fish Comm'n* into our Illinois takings clause jurisprudence. In the interest of judicial economy, I agree with the majority that we should address this question. However, I cannot agree with the majority's reasoning for adopting *Arkansas Game & Fish Comm'n* as a matter of Illinois law. The majority holds that we should adopt the analysis in *Arkansas Game & Fish Comm'n* because it is "consistent" with *Pratt* and "does not involve a significant change in Illinois law." *Supra* ¶¶ 17, 21, 22, 25. This is patently incorrect on the face of these decisions.

¶ 42   In *Arkansas Game & Fish Comm'n*, the Supreme Court held that, because government-induced flooding can constitute a taking of property, and because a taking need not be permanent to be compensable, "government-induced flooding of limited duration may be compensable" under the federal takings clause. *Arkansas Game & Fish Comm'n*, 568 U.S. at ___, 133 S. Ct. at 519. In so holding, the Court emphasized that the particular facts and circumstances of each case must be evaluated in determining whether temporary flooding constitutes a taking. *Id.* at ___, 133 S. Ct. at 521. In particular, the Supreme Court instructed that the following factors are to be considered: (1) the length of time of the physical invasion; (2) the "degree to which the invasion is intended or is the foreseeable result of authorized government action"; (3) "the character of the land at issue and the owner's 'reasonable investment-backed expectations' regarding the land's use"; and (4) the "[s]everity of the interference." *Id.* at ___, 133 S. Ct. at 522.[2]

¶ 43   Importantly, *Pratt* did not consider any of the above factors as relevant to the required Illinois takings clause analysis. In *Pratt*, the court noted the "grave" nature of the damages to plaintiffs' property from government-induced temporary flooding. *Pratt*, 399 Ill. at 251-52. These damages included damaged or destroyed valuable equipment, machinery, and supplies, as well as the necessity to change the floor levels, at great expense to the plaintiffs. *Id.* at 251. Nevertheless, the court held, because the floodwaters were merely temporary and not

---

[1]Plaintiffs moved in the circuit court for leave to amend their complaints to include a claim based on the federal takings clause. It appears from the record that the motion remains pending.

[2]The majority expressly incorporates into Illinois law the first three factors discussed in *Arkansas Game & Fish Comm'n* but makes no mention of the fourth, the "severity of the interference" caused by the invasion. *Supra* ¶ 25. The majority offers no explanation for this discrepancy.

- 11 -

"constantly present," plaintiffs were unable to state a claim under the Illinois takings clause. *Id.* Thus, the *Pratt* court rejected plaintiffs' claim solely based on the temporary nature of the flooding. This court did not recognize the *Arkansas Game & Fish Comm'n* factors, much less give them any weight in our takings analysis, because we did not even recognize a cause of action for a temporary flooding.

¶ 44    The majority now finds that *Arkansas Game & Fish Comm'n* is completely consistent with *Pratt.* This is clearly incorrect. Because the two cases cannot be reconciled, incorporating *Arkansas Game & Fish Comm'n* into Illinois takings law means that we are now implicitly overruling our own decision in *Pratt*. In my view, this court should explicitly overrule *Pratt*.

¶ 45    Under the "limited lockstep" approach for interpreting cognate provisions of our state and federal constitutions, when the language of the provisions within our constitutions is nearly identical, departure from the United States Supreme Court's construction of the provision will generally be warranted only if we find an indication in the language of our constitution, debates, or committee reports of the constitutional convention that the provisions of our state constitution are to be construed differently than are similar provisions in the federal constitution. *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 47. While the language in the Illinois takings clause is not identical to the federal takings clause, the part of the clause referring to "[p]rivate property *** taken *** for public use without just compensation" is identical. Ill. Const. 1970, art. I, § 15; U.S. Const., amend. V. Thus, courts have traditionally defined a "taking" under the Illinois takings clause in the same way that federal courts define a "taking" under the federal takings clause. See *Forest Preserve District v. West Suburban Bank*, 161 Ill. 2d 448, 455-58 (1994); *Muscarello v. Winnebago County Board*, 702 F.3d 909, 913 (7th Cir. 2012). No language in the constitution, debates, or committee reports dictates a different result. Thus, pursuant to the limited lockstep doctrine, it is appropriate to overrule *Pratt* and to adopt the multifactor test set forth in *Arkansas Game & Fish Comm'n* for purposes of determining whether temporary flooding constitutes a "taking" under the Illinois Constitution.

¶ 46    Finally, I agree with the majority that adopting the analysis in *Arkansas Game & Fish Comm'n* requires us to allow plaintiffs to amend their claims upon remand to the circuit court. *Supra* ¶ 29. Plaintiffs' complaints were filed in July 2011. *Arkansas Game & Fish Comm'n*, which determined that temporary, government-induced flooding may give rise to a claim under the federal takings clause, was decided in December 2012. Not only was *Arkansas Game & Fish Comm'n* decided more than a year after plaintiffs filed their complaints, it was not until today's opinion—more than four years after plaintiffs filed their complaints—that the reasoning of *Arkansas Game & Fish Comm'n* was first incorporated into Illinois law. Thus, it is appropriate that, upon remand to the circuit court, plaintiffs should be allowed to amend their complaints to address the factors in *Arkansas Game & Fish Comm'n*, if they are able to do so. See *Karas v. Strevell*, 227 Ill. 2d 440, 461 (2008).

¶ 47    For the foregoing reasons, I specially concur.

¶ 48    JUSTICES FREEMAN and KILBRIDE join in this special concurrence.

- 12 -